# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JOHN W. HICKS, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) Case No. CIV-04-498-FHS-SPS |
| | ) |
| JO ANNE B. BARNHART, | ) |
| Commissioner of the Social Security | ) |
| Administration, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

The claimant, John W. Hicks, pursuant to 42 U.S.C. § 405(g), requests judicial review of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for disability benefits under the Social Security Act. The claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred, because the ALJ incorrectly determined he was not disabled. For the reasons discussed below, the Commissioner's decision should be AFFIRMED.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act only "if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and

work experience, engage in any other kind of substantial gainful work in the national economy . . ." *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term substantial evidence has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The court may not reweigh the evidence nor substitute its discretion for that of the agency. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must

---

[1] Step one requires claimant to establish he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that claimant establish he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. *See id*. §§ 404.1521, 416.921. If claimant is engaged in substantial gainful activity (step one) or if claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity (RFC) to perform his past relevant work. If claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which claimant–taking into account his age, education, work experience, and RFC–can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

**Claimant's Background**

The claimant was born December 9, 1947, and was 50 years old at the time he last met insured status on March 31, 1998. He has a high-school education. The claimant previously worked as a meat cutter and a rancher. The claimant alleges he has been unable to work since March 31, 1998, because of numbness and pain in his left hand, hip, leg and foot, high blood pressure, and heart problems.

**Procedural History**

On February 10, 2003, the claimant protectively filed for Disability Insurance Benefits and Supplemental Security Income. This application was denied initially and upon reconsideration. On April 8, 2004, the claimant testified at a hearing in McAlester, Oklahoma, before ALJ Michael Kirkpatrick, where he was represented by attorney Kyle Saunders. On June 25, 2004, the ALJ issued a decision denying benefits. The Appeals Council denied the claimant's subsequent request for review on September 10, 2004. Accordingly, the administrative action is final in this case. 20 C.F.R. § 404.981.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He found the claimant had the residual functional capacity ("RFC") to: lift and carry 50 pounds occasionally and 25 pounds frequently; stand and walk six out of eight hours total; and, sit

six out of eight hours total, *i. e.*, that the claimant retained the RFC to perform the full range of medium work. 20 C.F.R. § 404.1568. Based on this RFC, and the claimant's age, education and work experience, the ALJ determined that the claimant was not disabled at any time through March 31, 1998 pursuant to Rule 203.21 of the Medical-Vocational Guidelines (commonly known as the "Grids").

## Review

The claimant asserts that the ALJ erred in determining that he was not disabled on or before March 31, 1998, the date he was last insured. Specifically, the claimant contends: (i) that the ALJ erroneously rejected the opinion of his treating physician, Dr. R. J. Helton, D.O., who stated that the was disabled as of January 1998; and, (ii) that the ALJ failed to follow Social Security Ruling 83-20, *i. e.*, that he failed to call a medical advisor to assist in determining the onset date of the claimant's disability. The undersigned Magistrate Judge finds both these contentions without merit.

First, it is clear that the ALJ did not err in rejecting Dr. Helton's opinion that the claimant was disabled as of January 1998. A medical opinion from a treating physician is entitled to controlling weight "if the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "consistent with other substantial evidence in the record." *See Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) [quotations omitted]. However, a physician's statement that a claimant is disabled is not a medical opinion entitled to "controlling weight" analysis or any other special significance. *See Balthrop v. Barnhart,*

116 Fed. Appx. 929, 932 (10th Cir. 2004) ("All the requirements discussed earlier regarding how medical source opinions must be assessed apply only to medical opinions. In contrast, the kind of extra-medical opinion involved here is "not give[n] any special significance" in the disability analysis."), *citing* Social Security Ruling 96-5p, 1996 WL 374183, at *5 ("[E]ven when offered by a treating source, [bald opinions regarding disability] can never be entitled to controlling weight or given any special significance.") [internal citations omitted]. All that is required with respect to such a statement by a treating physician is that the ALJ consider it, *see id.* at 932-33 ("[W]e note that even opinions on administrative issues reserved to the Commissioner are still evidence that cannot simply be disregarded."), which the ALJ did here. Specifically, the ALJ found that Dr. Helton's opinion was not supported by objective medical evidence, *i. e.*, there were no objective tests of the claimant's back, no mention of x-rays or other imaging and no records from a previous physician who had previously treated the claimant for back pain (Tr. at 19). *See Watkins*, 350 F.3d at 1301 ("[I]f the ALJ rejects the opinion completely, he must give specific, legitimate reasons for doing so.") [quotations omitted] The ALJ was therefore justified in rejecting Dr. Helton's opinion that the claimant was disabled as of January 1998. *See, e. g., Castellano v. Secretary of Health & Human Services*, 26 F.3d 1027, 1029 (10th Cir. 1994) ("A treating physician's opinion may be rejected if his conclusions are not supported by specific findings.").

Second, the ALJ did not err in failing to call a medical advisor to assist him in determining the onset date of the claimant's disability. A medical advisor is required only if the medical evidence is ambiguous. *See Reid v. Chater*, 71 F.3d 372, 374 (10th Cir. 1995)

("Ruling 83-20 recognizes that it sometimes may be necessary to infer the onset date. The ALJ then should call on the services of a medical advisor at the hearing. However, a medical advisor need be called only if the medical evidence of onset is ambiguous."), *citing Barley v. Chater*, 68 F.3d 75, 79 (4th Cir. 1995); *Spellman v. Shalala*, 1 F.3d 357, 362-63 (5th Cir. 1993); *Morgan v. Sullivan*, 945 F.2d 1079, 1082-83 (9th Cir. 1991) [internal citation omitted]. Here, the evidence was not ambiguous.

As the ALJ noted, the medical evidence prior to March 31, 1998, "is rather limited." (Tr. at 17). There were twenty-three medical exhibits submitted by the claimant prior to the hearing. The ALJ found that only three of these, Exhibits 1F, 19F, and 22F, pertain to the period of time prior to March 31, 1998. (Tr. at 17). Exhibit 1F (Tr. at 92-99), contains diagnosis of bursitis and hypertension. The most recent entry in these records is from June 25, 1993, to July 21, 1993, where the physician prescribed Relafen 2 once daily for the claimant's back and ordered an MRI to rule out disc [sic]. (Tr. at 92). The claimant was also prescribed Toradol for pain, and injected in the wrist with ½ cc of Marcaine, ½ cc of Kenalog, and ½ cc of Decadron which provided relief. Previous to these appointments, the records reflect several presentations by the claimant back to 1988 for complaints relating to bursitis, fasciitis, of the wrist, bursitis in the left and right shoulder. (Tr. at 92-97). There is no evidence of any objective tests or findings supporting any impairment of the back. There is no evidence of treatment for bursitis or hypertension after July 21, 1993, in claimant's Exhibit 1F.

Exhibit 19F notes complaints of pain in both knees and right hip dating back to April

15, 1994. The claimant reported the onset of the illness as "3 months ago." (Tr. at 344). Following the appointment of April 15, 1994, the claimant had an arthritis/bone disease profile conducted on April 18, 1994. The claimant did not test positive for Rheumatoid Arthritis. (Tr. at 341-342). The next mention of back pain was on October 23, 1995, when the claimant presented with low back pain and blood in his urine. The claimant was given Soma and Lortab, and scheduled for an Intravenous Pyelogram ("IVP"). The IVP was unremarkable. (Tr. at 331-332).

The next reference to back/joint pain was on January 5, 1998. The claimant presented to Dr. Helton with complaints of a productive cough and that his joints "are hurting all over." The claimant stated on presentation that his joints had been hurting for several years. Dr. Helton noted that the claimant had arthritis type pain and prescribed Lortab for the pain. (Tr. at 320). On March 24, 1998, the claimant presented again to Dr. Helton with complaints of low back pain. The claimant reported pain in his back, hips, arms, and shoulders. Dr. Helton characterized it as an "arthritic type pain," and prescribed Deltasone 30 mg for five days, and then 10 mg a day thereafter, and Tylenol #3 for the pain. (Tr. at 319). The claimant did not present again until June 1, 1998, when he presented with complaints of lower back pain. Dr. Helton prescribed Naprosyn 500 mg tid and gave the claimant 120 mg of Depo with the hopes it would help with the pain. (Tr. at 318). The claimant presented again on June 10, 1998, for a refill on all of his medications for chronic lumbar pain syndrome and hypertension as he was planning to go to Mexico for one to three months. The claimant's prescriptions were refilled and the claimant was instructed to return as needed. (Tr. at 317).

It is worth noting that the claimant has wholly failed to identify any ambiguity in the medical evidence itself. Indeed, the claimant's position seems to be that ambiguity arises from the ALJ's refusal to accept either of the onset dates advanced by the claimant, *i. e.*, Dr. Helton's opinion that the claimant was disabled as of January 1998 or the claimant's own unsupported allegation that he was disabled as of March 31, 1998. But in any event, the medical evidence was clearly not ambiguous. Leaving aside Dr. Helton's statement, the only physicians to consider the claimant's functional limitations were those assigned by the Commissioner to review the claimant's medical records and issue opinions. (Tr. at 346-353). Both of these experts agreed that prior to the March 31, 1998, the claimant had the RFC to lift 25 pounds frequently and 50 pounds occasionally, sit, stand and/or walk about six hours each in an eight-hour workday, and that he was unlimited in his ability to push/pull, and in his postural, manipulative, visual, communicative, and environmental abilities. (Tr. at 347-350). Further, the claimant's own statements support these findings; the claimant stated he was capable of driving, taking care of himself and working on a cattle ranch, and he was physically able to take a one to three month trip to Mexico in June 1998, only a few months after his insured status expired. (Tr. at 72, 267, 303, 307, 317). It simply cannot be said that the evidence as to whether the claimant was disabled as of March 31, 1998 is ambiguous, and the ALJ was therefore not required to call a medical advisor to resolve any ambiguity.

In summary, the ALJ properly determined that the claimant was not disabled as of March 31, 1998, the date he was last insured. There being no error by the ALJ in this determination, the decision of the Commissioner should be affirmed.

**Conclusion**

The undersigned Magistrate Judge finds that correct legal standards were applied by the ALJ and the decision of the Commissioner is therefore supported by substantial evidence. Accordingly, the Magistrate Judge RECOMMENDS that the ruling of the Commissioner of the Social Security Administration be AFFIRMED. The parties are herewith given ten (10) days from the date of this service to file with the Court Clerk any objections with supporting brief. Failure to object to the Report and Recommendation within ten (10) days will preclude appellate review of the judgment of the District Court based on such findings.

**DATED** this 29th day of September, 2006.

*[signature]*

**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**